Collin D. Cook (SBN 251606)
E-Mail: ccook@fisherphillips.com
Brandon K. Kahoush (SBN 311560)
E-Mail: bkahoush@fisherphillips.com
Victor C. Ng (SBN 325879)
E-Mail: vng@fisherphillips.com
FISHER & PHILLIPS LLP
1 Montgomery Street, Suite 3400
San Francisco, California 94104
Telephone: (415) 490-9000
Facsimile: (415) 490-9001

Attorneys for Defendant
BROADWAY MECHANICAL-
CONTRACTORS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ZARA R. AXELROD, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

BROADWAY MECHANICAL-CONTRACTORS, INC.; and DOES 1 through 10, inclusive,

Defendants.

CASE NO.:
*[Removed from Sonoma County Superior Court, Case No. 25CV08270]*

**DEFENDANT BROADWAY MECHANICAL-CONTRACTORS, INC.'S NOTICE OF REMOVAL**

State Complaint Filed: November 20, 2025
Trial Date: Not Set

# TABLE OF CONTENTS


I. THE STATE COURT ACTION .......... 6

II. REMOVAL IS SUBJECT TO A LIBERAL PLEADING STANDARD .......... 7

III. LEGAL ARGUMENT .......... 7

IV. FACTUAL BACKGROUND .......... 8

V. FEDERAL QUESTION JURISDICTION EXISTS .......... 9

A. Section 301 Preemption Applies Because Plaintiff's Claims Involve Rights That Arise Solely From the Collective Bargaining Agreement .......... 10

B. Section 301 Preemption Applies Because Plaintiff's Claims Depend on Interpretation of the Collective Bargaining Agreements .......... 14

C. Plaintiff's Failure to Reference Section 301 of the LMRA in Her Complaint Does Not Preclude Removal .......... 16

VI. SUPPLEMENTAL JURISDICTION .......... 17

VII. VENUE IS PROPER .......... 17

VIII. THE REQUIREMENTS OF 28 U.S.C. § 1446 ARE MET .......... 18

IX. CONSENT TO REMOVAL .......... 18

X. NOTICE PROVIDED TO STATE COURT AND PLAINTIFF .......... 18

XI. CONCLUSION .......... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allis-Chalmers Corp. v. Lueck*,
471 U.S. 202 (1985) .......... 14

*Burnside v. Kiewit Pacific Corp.*,
491 F.3d 1052 (9th Cir. 2007) .......... 10

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987) .......... 17

*City of Chicago v. Int's Conference of Surgeons*,
522 U.S. 156 (1997) .......... 17

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
135 S.Ct. 547 (2014) .......... 7

*Firestone v. Southern Cal. Gas. Co.*,
219 F.3d 1063 (9th Cir. 2000) .......... 10, 14

*Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for So. Cal*
(1983) 463 U.S. 1 .......... 10, 17

*Hardy v. Square D Co.*,
199 F.Supp.2d 676 (N.D. Ohio 2002) .......... 18

*Hayden v. Reickerd*,
957 F.2d 1506 (9th Cir. 1991) .......... 17

*Levy v. Skywalker Sound*,
108 Cal.App.4th 753 (2003) .......... 15

*Lingle v. Norge Div. of Magic Chef, Inc.*,
486 U.S. 399 (1988) .......... 10

*Lippitt v. Raymond James Financial Servs., Inc.*,
340 F.3d 1033 (9th Cir. 2003) .......... 16

*Milne Employees Ass'n v. Sun Carriers, Inc.*,
960 F.2d 1401 (9th Cir. 1991) .......... 16

*Murphy Bros, Inc. v. Michetti Pipe Stringing, Inc.*,
526 U.S. 344 (1999) .......... 7

*Newberry v. Pac. Racing Ass'n*,
854 F.2d 1142 (9th Cir. 1988) .......... 14

*Schroeder v. Trans World Airlines, Inc.*,
702 F.2d 189 (9th Cir. 1983), overruled in part on other grounds in *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009) .......... 16, 17

*Voorhees v. Naper Aero Club, Inc.*,
272 F.3d 398 (7th Cir. 2001) .......... 14

*Vranish v. Exxon Mobil Corp.*
(2014) 223 Cal.App.4th 103 .......... 11, 12

*Young v. Anthony's Fish Grottos, Inc.*,
830 F.2d 993 (9th Cir. 1987) .......... 16

**Statutes**

28 U.S.C. §§ 84(c), 84(d), 1391, and 1446 .......... 18

28 U.S.C. § 1331, 1367, 1367(a), 1441, 1441(a), 1446, 1446(a), 1446(b), 1446(d) .......... 6, 7, 9, 17, 18

29 U.S.C. § 185(a) (LMRA § 301) .......... 6, 10

Cal. Bus. & Prof. Code §§ 17200, *et seq*. .......... 7, 14

Cal. Lab. Code §§ 201–204, 226, 226.7, 510, 512, 512 (e),

514 .......... 6, 7, 11, 12, 13, 14, 15,

Cal. Lab. Code §§ 1194, 1194.2, 1197, 1198 .......... 6

Cal. Lab. Code § 2802 .......... 6

California Business and Professions Code section 17200 .......... 9

Fair Labor Standards Act .......... 16

Labor Management Relations Act .......... 10

**Other Authorities**

California IWC Wage Order No. 16 .................................................. 8, 9, 11, 12, 13

Federal Rules of Civil Procedure Rule 8(a) .................................................. 7

N.D. Cal. Civ. L.R. 3-2(c)-(d) .................................................. 18

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. sections 1331, 1367, 1441, and 1446, Defendant BROADWAY MECHANICAL-CONTRACTORS INC. ("Defendant" or "BMC"), removes the above-entitled action from the Superior Court of the State of California for the County of Sonoma to the United States District Court for the Northern District of California. Removal is proper based on 29 U.S.C. § 185(a). This action is removed pursuant to the procedures found in 28 U.S.C. §§ 1441 and 1446, and removal jurisdiction is based on 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1446(d), Defendant will also file a copy of this Notice of Removal with the Sonoma County Superior Court.

## I. THE STATE COURT ACTION

1. On November 20, 2025, Plaintiff Zara R. Axelrod ("Plaintiff") filed a putative Class Action Complaint with the Superior Court of the State of California, County of Sonoma, entitled *Zara R. Axelrod, an individual, on behalf of herself and on behalf of all persons similarly situated, v. Broadway Mechanical-Contractors, Inc*., Case No. 25CV08270 (the "Complaint"). On December 9, 2025, Plaintiff served a copy of the Summons and Complaint on BMC. A true and correct copy of the Summons, Complaint, and related state court materials is attached as **Exhibit A** to the Declaration of Ken Nurisso ("Nurisso Decl."), ¶ 3.

2. The Complaint asserts eight putative class claims against Defendant stemming from the employment of Plaintiff and the putative class members. Specifically, the Complaint alleges causes of action for: (1) Failure to Pay Minimum Wages [Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197]; (2) Failure to Pay Overtime Compensation [Cal. Lab. Code §§ 1194 and 1198]; (3) Failure to Provide Meal Periods [Cal. Lab. Code §§ 226.7, 512]; (4) Failure to Authorize and Permit Rest Breaks [Cal. Lab. Code §§ 226.7]; (5) Failure to Indemnify Necessary Business Expenses [Cal. Lab. Code § 2802]; (6) Failure to

Timely Pay Final Wages at Termination [Cal. Lab. Code §§ 201-203]; (7) Failure to Provide Accurate Itemized Wage Statements [Cal. Lab. Code § 226]; and (8) Unfair Business Practices [Cal. Bus. & Prof. Code §§ 17200, *et seq*.].

3. On January 7, 2026, BMC timely filed an Answer to the Complaint, followed by a First Amended Answer, copies of which are attached as Exhibits C and D to the Declaration of Brandon Kahoush, ¶¶ 2-3.

4. For purposes of removal, BMC relies on the claims alleged by Plaintiff Zara R. Axelrod, whose employment was governed by a Collective Bargaining Agreement, including an applicable Memoranda of Understanding.

## II. REMOVAL IS SUBJECT TO A LIBERAL PLEADING STANDARD

5. In 2014, the U.S. Supreme Court held that notices of removal are subject to the same general pleading standards applicable to complaints pursuant to Rule 8(a) of the Federal Rules of Civil Procedure and that such notices need not attach evidence or meet a burden of proof, but rather need only contain a "short and plain statement of the grounds for removal." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 553 (2014) (quoting 28 U.S.C. § 1446(a)). Only if the Court, or another party, contests the allegations of removability must the removing party submit evidence supporting its allegations, whereupon removability is decided under a preponderance of evidence standard. *See Dart Cherokee*, 135 S.Ct. at 553-554.

## III. LEGAL ARGUMENT

6. Under 28 U.S.C. § 1446(b), a "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt of defendant through service . . .." The 30-day period for removal is triggered once service occurs. *Murphy Bros, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

7. Plaintiff served the Summons and Complaint and related state court materials on BMC on December 9, 2025. Nurisso Decl., ¶ 3, Ex. A.

8. This Notice of Removal is filed within thirty (30) days of service and is therefore timely under 28 U.S.C. § 1446(b).

## IV. FACTUAL BACKGROUND

9. BMC is a California based mechanical contracting company headquartered in Oakland, California. BMC performs on-site construction work and provides design, construction, fabrication, commissioning, and start-up services for complex plumbing, piping, and heating, ventilation, and air-conditioning ("HVAC") systems on commercial and institutional construction projects throughout the San Francisco Bay Area. Nurisso Decl., ¶ 2. BMC's employees work in the construction industry and are therefore governed by California IWC Wage Order No. 16.

10. BMC is a member of the Bay Area Association of SMACNA Chapters, a multi-employer bargaining association affiliated with the Sheet Metal and Air Conditioning Contractors' National Association ("SMACNA"). Nurisso Decl., ¶¶ 4-5. SMACNA is an international trade association representing thousands of signatory mechanical contracting firms through local and regional chapters. Through its affiliated associations, SMACNA engages in multi-employer collective bargaining with labor unions representing sheet metal and mechanical construction employees.

11. Through its membership in the Bay Area Association of SMACNA Chapters, BMC is a signatory to a Collective Bargaining Agreement ("CBA") with Sheet Metal Workers Local Union No. 104 ("Local Union No. 104") of the International Association of Sheet Metal, Air, Rail and Transportation Workers ("SMART"). Nurisso Decl., ¶ 6.

12. At all relevant times, Local Union No. 104 had, and currently has, a valid and operative CBA in place with the Bay Area Association of SMACNA Chapters. Nurisso Decl., ¶ 7. At all relevant times, BMC was, and remains, a party to the CBA. The CBA sets forth the terms and conditions of employment applicable to Plaintiff and the putative class. *Id.*, ¶ 7, Ex. B.

13. In addition to the CBA, BMC, the Bay Area Association of SMACNA Chapters, and Local Union No. 104 negotiated a Memorandum of Understanding ("MOU"), and that MOU dated September 2, 2023 addresses, among other things, the resolution of statutory wage and hour disputes, including claims arising under the

California Labor Code and applicable IWC Wage Orders (e.g., IWC Wage Order 16), and provides procedures governing the processing of such disputes. Nurisso Decl., ¶ 8, Ex. C.

14. The MOU was continued in effect and incorporated into the operative collective bargaining framework through a Tentative Agreement dated May 9, 2025, updating and extending the terms of the CBA through June 30, 2030. Nurisso Decl., ¶ 9, Ex. D.

15. Plaintiff was employed by BMC as a bargaining unit employee during the relevant period and was represented by Local Union No. 104 for the entirety of her employment with BMC. As a result, the terms and conditions of Plaintiff's employment and the employees in her bargaining unit were governed by the CBA. Nurisso Decl., ¶ 10.

16. The putative class members identified in the Complaint include current and former BMC employees who were, and are, members of bargaining units represented by Local Union No. 104 during the relevant period alleged in the Complaint. The terms and conditions of employment for Plaintiff and the putative class members are governed by CBA and related collectively bargained agreements. Nurisso Decl., ¶¶ 4-10.

17. Plaintiff generally alleges that BMC violated the California Labor Code and applicable IWC Wage Orders by failing to pay Plaintiff and the putative class for all hours worked, including minimum and overtime wages; failing to provide compliant meal periods; failing to authorize and permit compliant rest periods; failing to reimburse necessary business expenses; failing to provide accurate wage statements; and failing to timely pay all wages due upon separation. Plaintiff further asserts derivative claims, including claims under California Business and Professions Code section 17200. Nurisso Decl., ¶ 3, Ex. A. The class-wide claims asserted in the Complaint are identical to those asserted by Plaintiff in her individual capacity. *Id.*

## V. FEDERAL QUESTION JURISDICTION EXISTS

17. This Court has original jurisdiction under 28 U.S.C. § 1331, and this case may be removed pursuant to the provisions of 28 U.S.C. §§ 1441(a) and 1446, because this is a civil action that presents a federal question.

18. Federal question jurisdiction exists because the claims arise out of multiple CBAs, and thus, are preempted by federal law under the Labor Management Relations Act ("LMRA"). 29 U.S.C. § 185(a). Section 301 of the LMRA provides that: "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in a district court for the United States having jurisdiction of the parties without regarding to the amount in controversy or without regarding to the citizenship of the parties." *Firestone v. Southern Cal. Gas. Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000). To ensure uniform interpretations of CBAs, federal common law preempts the use of state contract law in collective bargaining agreement interpretation and enforcement. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988).

19. The Ninth Circuit has articulated a two-part test to determine whether Section 301 preempts a claim. *Burnside v. Kiewit Pacific Corp.,* 491 F.3d 1052, 1059-60 (9th Cir. 2007). First, the court analyzes whether the asserted cause of action involves a right that exists solely as a result of the collective bargaining agreement. *Id.* If so, the claim is preempted. *Id.* Second, if the right exists independent of the CBAs, then the court must determine whether the right is substantially dependent on analysis of the collective bargaining agreement. *Id.*

**A. Section 301 Preemption Applies Because Plaintiff's Claims Involve Rights That Arise Solely From the Collective Bargaining Agreement**

20. Section 301(a) of the LMRA gives federal courts exclusive jurisdiction to hear "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). Courts have long recognized that Section 301 is the exclusive remedy for suits alleging violations of a CBA, and that this statute preempts any attempt to assert state law-based claims that are seeking redress for alleged breaches of such an agreement. *See Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for So. Cal* (1983) 463 U.S. 1, 23 ("the preemptive force of § 301 is so powerful as to displace entirely any state causes of action 'for violation of contracts between an employer and a labor

organization.' Any such suit is purely a creation of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301".) As explained below, Plaintiff's claims for overtime, meal periods, rest periods, and related derivative claims all arise solely out of the CBAs by virtue of the fact that they satisfy the statutory exemption existing under the California Labor Code and/or Wage Order No. 16.

1. *The Overtime Claims are Displaced Pursuant to Labor Code section 514*

21. Under Labor Code section 514, California's daily overtime requirement does not apply to employees covered by a valid collective bargaining agreement that provides for wages, hours of work, and working conditions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay not less than 30 percent above the state minimum wage. Whether those statutory prerequisites are satisfied for Plaintiff and the putative class depends on interpretation of the Local 104 CBA and related agreements.

22. In *Vranish v. Exxon Mobil Corp.* (2014) 223 Cal.App.4th 103, the Court of Appeal confirmed that when a qualifying collective bargaining agreement satisfies the conditions set forth in Labor Code section 514, the requirements of Labor Code section 510 no longer control. Instead, overtime obligations are determined by the terms negotiated in the collective bargaining agreement, including the circumstances under which overtime compensation is triggered. *See Id.* at 120–121. Therefore, when a CBA exemption is met, the claimant possesses, if at all, a claim arising from the collectively bargained agreement rather than an independent statutory right under the Labor Code.

23. The Local 104 CBA sets forth premium wage rates for overtime hours worked. Nurisso Decl., ¶ 7, Ex. B, pp. 23, 42-43, 100, 115. The Local 104 CBA further establishes multiple negotiated wage schedules, including construction and light commercial classifications, with tiered journeyperson, apprentice, and pre-apprentice rates that vary by classification and effective date. *Id.*, pp. 46-47, 109-116. Determining whether the minimum hourly rate applicable to a particular employee during a particular period satisfied the threshold set forth in Labor Code section 514 requires interpretation of these collectively bargained wage schedules in light of the applicable state minimum wage

in effect at the time.

24. Under the holding in *Vranish*, whether overtime was due turns on how those terms are defined in the relevant Local 104 CBA and related Memorandum of Understanding, as continued in effect through the May 9, 2025 Tentative Agreement. As a result, Labor Code section 510 does not apply to Plaintiff's claims for overtime on behalf of herself, or any putative class member that belongs to Local 104. At minimum, adjudicating Plaintiff's overtime claims requires interpretation of the CBA and related agreements, and those claims arise solely out of a CBA, and are thus preempted by Section 301 of the LMRA.

2. *The Rest Period Claim Is Exempt Under Wage Order No. 16 Section 11(E)*

25. Plaintiff's rest break claims also arise from a CBA. Wage Order No. 16 section 11(E) states, "[t]his section shall not apply to any employee covered by a valid collective bargaining agreement if the collective bargaining agreement provides equivalent protections."

26. Wage Order No. 16 section 11(D) further states, "If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided. In cases where a valid collective bargaining agreement provides final and binding mechanism for resolving disputes regarding enforcement of the rest period provisions, the collective bargaining agreement will prevail."

27. For example, Local 104 CBA authorizes rest periods at a rate of "ten (10)-minutes rest period shall be provided for each four (4) hours worked or major fraction thereof." Nurisso Decl., ¶ 7, Ex. B, pp. 43, 100, 116.

28. The aforementioned rest period requirements are subject to the Local 104 CBA's mandatory grievance and final and binding arbitration procedures. Nurisso Decl., ¶ 7, Ex. B, Article X, pp. 12-18.

29. As a result, the rest break requirement under Section 11 of Wage Order 16 does not apply. Instead, Plaintiff's rest period claim on behalf of herself and Local 104 putative class members arises out of the negotiated rest period provisions of the Local 104 CBA and related agreements and at minimum require interpretation of those provisions and are therefore preempted by Section 301 of the LMRA.

*3. The Meal Period Claims are Displaced Pursuant to Labor Code section 512(e) and Wage Order No. 16 section 10(E)*

30. Labor Code section 512(e) and section 10(E) of Wage Order No. 16 provide exemptions to the standard statutory meal period requirement under Labor Code section 512 when a valid CBA agreement provides the following: (1) wages, hours of work, and working conditions of employees, (2) premium wage rates for overtime hours and a regular rate of pay not less than 30% of the state minimum wage rate; (3) meal periods for all covered employees; and (4) final and binding arbitration of disputes concerning the application of meal period provisions.

31. These exemptions are satisfied by the language of the Local 104 CBA and the related MOU. First, the Local 104 CBA sets forth wages, hours of work, and working conditions of covered employees. Second, the CBA provides premium wage rates for overtime hours worked and establishes negotiated wage schedules that vary by classification and effective date and must be evaluated in light of the applicable state minimum wage during the relevant period. Nurisso Decl., ¶ 7, Ex. B, pp. 110-118. Third, the Local 104 CBA provides that its represented employees are afforded a 30-minute meal period approximately halfway through all shifts and a second 30-minute meal period if the workday when working more than ten (10) hours per day and an additional 30-minute meal period for each four (4) hours worked thereafter. *Id.* at p. 43, 100, 115. Fourth, the Local 104 CBA provides that disputes regarding the enforcement and application of its meal period provisions are subject to final and binding grievance arbitration. *Id.* at pp. 12-18.

32. As a result, Plaintiff's meal break claims on behalf of herself and the Local 104 putative class members also arise from, or at minimum require interpretation of, the

relevant CBAs and are preempted by Section 301.

*4. Plaintiff's Derivative Claims Also Arise From the CBA*

33. Plaintiff's other claims, including failure to provide accurate itemized wage statements under Labor Code section 226 and unfair competition under Business and Professions Code section 17200 *et seq*., are derivative of Plaintiff's claims that arise from CBA language. For example, Plaintiff's wage statement claim relies on the allegation that BMC failed to accurately report overtime and meal or rest period premiums. BMC's overtime, meal, and rest obligations arise solely from the language of CBAs. As a result, any derivative claims arising out of these statutory violations, including but not limited to claims under Labor Code sections 226, Labor Code section 203, and Business and Professions Code section 17200 *et seq*. are similarly preempted by Section 301 of the LMRA.

**B. Section 301 Preemption Applies Because Plaintiff's Claims Depend on Interpretation of the Collective Bargaining Agreements**

34. To the extent any of Plaintiff's claims do not directly arise out of the CBAs, federal question jurisdiction still exists because all state law claims raised by a union-represented employee that require interpretation of a collective bargaining agreement must also be brought pursuant to Section 301. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). "The preemptive force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement . . . any state claim whose current outcome depends on analysis of the terms of the agreement." *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988); *see Voorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001) (noting that Section 301 is one of "only two areas in which the Supreme Court has found that Congress intended completely to replace state law with federal law for purposes of federal jurisdiction.")

35. Section 301 has been held to preempt California state law claims that are substantially dependent upon the interpretation of a collective bargaining agreement. *Firestone*, 219 F.3d at 1066-67. This is even so where interpretation was required to

evaluate the employer's defense to a plaintiff's state law causes of action. *See Levy v. Skywalker Sound*, 108 Cal.App.4th 753, 769 (2003) (claim for unpaid wages preempted because it "rest[ed] entirely" on a claim that plaintiff was "entitled . . . to wages at the level set by the CBA").

36. Here, resolving the individual and class claims requires interpreting the various CBAs. To the extent any of the above-referenced statutory exemptions do not apply, the Court will be required to analyze and interpret the collective bargaining provisions governing overtime, meal periods, and rest periods.

37. Moreover, Plaintiff alleges additional claims that require interpretation and application of the CBAs. Plaintiff seeks waiting time penalties pursuant to Labor Code section 203. Whether any wages were "due," when such wages were required to be paid, and whether payment was timely must be determined by reference to the Local 104 CBA's provisions governing wages, pay periods, and final compensation. *See* Nurisso Decl., ¶ 7, Ex. B, pp. 22-24, 110-118. In addition, disputes concerning the timing and payment of wages are subject to the CBA's mandatory grievance and final and binding arbitration procedures. *Id.* at pp. 12-18. Plaintiff's potential entitlement to, and calculation of, waiting time penalties therefore turns on interpretation of the CBA.

38. Additionally, the Complaint alleges BMC failed to reimburse employees for required business expenses. Local 104 CBA describes how represented employees can seek reimbursement of various business-related expenses. Nurisso Decl., ¶ 7, Ex. B, p. 24. Plaintiff's reimbursement claim will also require interpretation of the appropriate CBA.

39. Moreover, whether bargaining unit employees have standing to participate in this action requires interpretation of the collective bargaining agreement's classification-based provisions governing different categories of work. Under the CBA, both "construction" and "light commercial" classifications refer to bargaining unit employees performing covered construction work on commercial projects, subject to negotiated variations in wage rates and scheduling. The CBA applies different negotiated wage structures, scheduling rules, and dispute-resolution procedures to these classifications, and

the CBA and related memoranda of understanding further address how statutory wage and hour claims arising under the California Labor Code, applicable Industrial Welfare Commission wage orders, and the Fair Labor Standards Act are to be resolved for each classification, including limitations on judicial and representative proceedings. Because Plaintiff's Complaint does not specify which bargaining unit classifications are implicated, determining whether any bargaining unit employees may pursue claims in this action necessarily requires interpretation of the CBA and related agreements, supporting federal jurisdiction under Section 301 of the LMRA.

40. Because a Court will be required to interpret multiple provisions of several CBAs, the individual and class claims are dependent on the Court's analysis of the CBAs. Therefore, Section 301 preempts Plaintiff's individual and putative class claims.

**C. Plaintiff's Failure to Reference Section 301 of the LMRA in Her Complaint Does Not Preclude Removal**

41. The Complaint omits the fact that Plaintiff and the putative class were union members with terms and conditions of employment dictated by CBAs. However, a plaintiff may not be permitted to "artfully plead" her complaint to conceal the true nature of the complaint. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (holding that plaintiff's state law claim was preempted even though the operative complaint made no mention of a collective bargaining agreement); *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983), overruled in part on other grounds in *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009).

42. Thus, the fact that Plaintiff has not made specific reference to Section 301 in her Complaint does not preclude removal. *See Milne Employees Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1406 (9th Cir. 1991). The Court may properly look beyond the face of the Complaint to determine whether claims asserted are in fact preempted by Section 301. *See Lippitt v. Raymond James Financial Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003).

43. Additionally, the Court may properly look to the facts stated in the Notice of

Removal "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder*, 702 F.2d at 191.

44. An artfully pled state law claim is properly "recharacterized" as a federal claim under the "corporate preemption" doctrine, which provides that the preemptive force of 301 "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is removable to federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) ("[I]f a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises' under federal law.")

45. The claims asserted in Plaintiff's Complaint are "founded directly on rights created by collective bargaining agreements" and/or are substantially dependent on an analysis and interpretation of a collective bargaining agreement. *See Hayden v. Reickerd*, 957 F.2d 1506, 1509 (9th Cir. 1991); *see also Caterpillar Inc.*, 482 U.S. at 394. Thus, to analyze Plaintiff's claims the Court will need to interpret the provisions of the relevant CBAs.

## VI. SUPPLEMENTAL JURISDICTION

46. To the extent this Court considers Plaintiff's other theories, this Court has supplemental jurisdiction over those remaining claims because they form part of the same case or controversy that is the subject of Plaintiff's claims. 28 U.S.C. §§1367(a), 1441(a); *see City of Chicago v. Int's Conference of Surgeons*, 522 U.S. 156, 156-59 (1997) (affirming the exercise of supplemental jurisdiction over a plaintiff's state law claims where they have a "common nucleus of operative fact" with the federal claims).

47. This Court has jurisdiction over all claims in the Complaint.

## VII. VENUE IS PROPER

48. In accordance with 28 U.S.C. section 1441(a), this Notice of Removal and Removal is filed in the District Court of the United States in which the action is pending. The Superior Court of California, County of Sonoma is located within the Northern District

of California. 28 U.S.C. section 84(d). Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. section 1441(a). Venue properly lies in the San Francisco Division or Oakland Division of the United States District Court for the Northern District of California because this action was originally brought with the Superior Court of the State of California, County of Sonoma. *See* 28 U.S.C. §§ 84(c), 1391, and 1446; *see also* L.R. 3-2(c)-(d).

## VIII. THE REQUIREMENTS OF 28 U.S.C. § 1446 ARE MET

49. In accordance with 28 U.S.C. section 1446(a), this Notice of Removal is accompanied by Exhibits A through D, which include copies of all process, pleadings, and orders served upon BMC.

50. As required by 28 U.S.C. section 1446(b), the Notice of Removal was filed within 30 days after the Summons and Complaint was deemed served on BMC. *Hardy v. Square D Co.*, 199 F.Supp.2d 676, 680 (N.D. Ohio 2002).

51. In accordance with 28 U.S.C. section 1446(d), BMC will give written notice of the original removal of this action to Plaintiff via her counsel and file a copy of that Notice with the Superior Court of California, County of Sonoma.

## IX. CONSENT TO REMOVAL

52. All defendants are required to consent or join in removal for purposes of traditional diversity jurisdiction. The only named Defendant is BMC, who brings this removal petition.

## X. NOTICE PROVIDED TO STATE COURT AND PLAINTIFF

53. As required by 28 U.S.C. section 1446(d), promptly after filing of this Notice and Petition of Removal, BMC will file in the Superior Court of the State of California, County of Sonoma, a pleading entitled Notice of Filing of Notice of Removal, with a copy of this Notice and Petition of Removal attached thereto. Further, BMC has served upon Plaintiff a copy of this Notice and Petition of Removal and will promptly serve upon Plaintiff a copy of BMC's Notice of Filing of Notice and Petition of Removal.

///

54. In filing this notice, BMC does not waive any defenses or admit any of the allegations raised by Plaintiff in her Complaint are true.

## XI. CONCLUSION

55. This Court has original federal question jurisdiction because Plaintiff's claims either arise from, or require interpretation of, the various CBAs covering the putative class and, as such, are preempted by Section 301. Accordingly, BMC removes the above-entitled action to this Court. In the event this Court has a question regarding the propriety of this Notice of Removal, BMC requests that it issue an Order to Show Cause so that it may have an opportunity to more fully brief the basis for this removal.

Dated: January 8, 2026 FISHER & PHILLIPS LLP

By: */s/ Brandon K. Kahoush*
Collin D. Cook
Brandon K. Kahoush
Victor C. Ng

Attorneys for Defendant
BROADWAY MECHANICAL-CONTRACTORS, INC.

# CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 years, employed in the County of San Francisco, State of California, and not a party to the within action. I am employed with the law offices of Fisher & Phillips LLP and its business address is 1 Montgomery Street, Suite 3400, San Francisco, California 94104.

On January 8, 2026, I served the following document entitled **DEFENDANT BROADWAY MECHANICAL-CONTRACTORS, INC.'S NOTICE OF REMOVAL** on all the appearing and/or interested parties in this action as follows:

| | |
|---|---|
| Kane Moon<br>Allen Feghali<br>S. Phillip Song<br>Ryan David Kim Handley<br>MOON LAW GROUP, PC<br>725 S. Figueroa Street, Suite 3100<br>Los Angeles, California 90017 | *Attorneys for Plaintiff*<br>Telephone: (213) 232-3128<br>Email: kmoon@moonlawgroup.com<br>afeghali@moonlawgroup.com<br>psong@moonlawgroup.com<br>rhandley@moonlawgroup.com |

☒ **[by MAIL]** – I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice the enclosed document(s) will be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☐ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

☐ **[by ELECTRONIC SERVICE]** - Pursuant to an agreement of the parties to accept service by electronic transmission, I electronically served the document(s) to the person(s) at the electronic service address(es) listed above.

I declare that I am employed in the office of a member of the State of California at whose direction the service was made.

Executed on January 8, 2026 at San Francisco, California.

Niya Williams